UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:23-cr-279 |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| ANTONIO KNOTT, | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Antonio Knott's Motion to Reopen Hearing on Government's Motion for Pre-trial Detention. (Doc. No. 29.) The government opposed the motion (Doc. Nos. 33 and 39), and Defendant replied in support (Doc. No. 35). For the reasons stated below, Knott's motion is DENIED.

**I.  Background**

On January 18, 2023, a criminal complaint was filed charging Knott with Conspiracy to Distribute and Distribution of Controlled Substances, a violation of 21 U.S.C. §§ 846 and 841(a)(1), and Use of a Communications Facility to Facilitate a Felony Drug Offense, a violation of 21 U.S.C. § 843(b). (Doc. No. 1.) The initial appearance was held the next day.

Knott reported to the Pretrial Services Department that he used prescribed Xanax and Adderall, with medication monitoring every three months. (Doc. No. 6 at PageID 24.) The Pretrial Services Department assessed potential dangerousness, including the nature of the offense as well as Knott's substance abuse and mental health history, and recommended detention. (*Id*. at PageID 28.) The preliminary/detention hearing began on January 31, 2023. (Minutes of Proceedings, 1/31/2023.) It was continued "until several days before the completion

of in-patient residential substance abuse treatment." (*Id.*) Defendant was released on bond with stated conditions, including that he must:

> participate in a program of inpatient residential substance abuse therapy and counseling and refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency or accuracy of any prohibited substance testing which is required as a condition of release.
>
> Defendant shall remain in custody until arrangements may be made for residential treatment for at least 31-days. Defendant to successfully complete residential treatment, and follow all aftercare program rules as directed.
>
> Defendant to return to Court upon successful completion of residential treatment for the continuance of the Detention Hearing. Upon successful completion of residential treatment, defendant is to reside at a residence and/or sober living facility as approved by Pretrial Services if the Court determines at the conclusion of the Detention Hearing that he is to be released on bond at that time.

(Doc. No. 10 at PageID 38.)

Knott was discharged from the treatment program for "threatening his counselor and failing to abide by program rules." (Doc. No. 16.) A revocation and detention hearing was set for March 13, 2023, but postponed twice on Knott's motions. These continuances were sought so Knott could schedule an appointment with his physician, Dr. McLaughlin. (Doc. No. 29 at PageID 149.) According to Knott, the "primary purpose of the medical appointment was to have Dr. McLaughlin prescribe medications to Mr. Knott that would allow him to control his temper and violent mood swings. That prescription, however, could not be for Xanax or Adderall, which Dr. McLaughlin had previously prescribed but neither of which were permitted at [the residential treatment facility] or [the Northeast Ohio Correctional Center]." (*Id*. at PageID 149-50.)

The detention hearing was held on March 28, 2023. (Minutes of Proceedings, 3/28/2023.) On April 6, 2023, the Magistrate Judge ordered pretrial detention. (Doc. No. 22.) The Detention Order outlined the history of this matter, including Knott's efforts to obtain

medical records and meet with Dr. McLaughlin. (*Id.*) Indeed, the court recognized that "[a]t the March 28, 2023, detention hearing, Mr. Knott – through counsel – introduced medical records into evidence under seal as Exhibit A."[1] (*Id*. at PageID 114.) The Magistrate Judge considered the Section 3142(g) factors and concluded that all four factors – nature and circumstances of the offense, weight of the evidence, history and characteristics of the person, and nature and seriousness of the danger to any person or the community – weighed in favor of detention. Pertinent to the motion here, the Magistrate Judge stated:

> Mr. Knott suffers from anxiety, bipolar disorder, and metal blackouts. As set forth above, the Pretrial Services Report recounts that Mr. Knott reported daily use of amphetamines, benzodiazepines, and cannabinoids. Though the Court continued the January 31, 2023 detention hearing to allow Mr. Knott the opportunity to gain in-patient drug treatment . . ., he was discharged due to abusive and intimidating behavior. Accordingly, when weighing Mr. Knott's circumstances and history, this factor also weighs in favor of detention based on danger to the community and others.

(*Id*. at PageID 118.)

In assessing potential release conditions, the Magistrate Judge considered Knott's request for another opportunity to participate in an in-patient treatment program. (*Id*. at PageID 119.) She also considered the government's argument that Knott had, in fact, obtained care from a Cleveland Clinic physician while detained at NEOCC, that NEOCC could administer prescribed medications, and that Knott's conduct had demonstrated the danger he poses to others, including those at treatment facilities. (*Id*.) The Magistrate Judge determined that there was no condition

---

[1] Exhibit A includes references to Knott's treatment of medical staff at the Cleveland Clinic, including "[t]ends to get frustrated and yell/cuss at our office staff and pharmacists over this [Adderall supply shortage]. Patient advise[d] to not do this in future. He agrees." (Doc. No. 21-1 at PageID 68); and "[l]ast encounter with D Raimey did not go well. Patient was irritable and rude. Apparently declined treatment recommendations at this time. Has called Cleveland Clinic Foundation ombudsman. Cleveland Clinic Foundation legal counsel also involved at some level." (*Id*. at PageID 70). Knott acknowledges his history of poor interactions with Cleveland Clinic medical professionals and staff. (Doc. No. 35 at PageID 190.)

or combination of conditions that reasonably assured the safety of the community or others, and Knott was ordered to be detained.

## II. Law and Analysis

Defendant has expressly moved to reopen the detention hearing pursuant to Section 3412(f)(2). (Doc. No. 29 at PageID 148.) Section 3142(f)(2) permits granting such a motion

> at any time before trial if a judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2).

New information requires "something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *United States v. Jerdine*, No. 1:08-cr-481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009), *aff'd*, 511 F. App'x 391 (6th Cir. 2013). The statutory provision authorizing the reopening of a detention hearing is strictly interpreted such that "hearings should not be reopened if the evidence proffered was available at the time of the hearing." *Id.*; *see United States v. Blackwell*, No. 5:21-cr-736-5, 2022 WL 2833814, at *3 (N.D. Ohio July 19, 2022). "[T]he new information must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012).

Defendant argues that the new information warranting the reopening of the detention hearing consists of his present inability to obtain prescribed medications and treatment that will

curb his violent outbursts (Doc. No. 29 at PageID 150) and his surprise at being indicted rather than proceeding by way of information (*id.* at PageID 151-52).

In considering Defendant's first argument in support of reopening the detention hearing, being denied access to certain prescription medications and treatment, Defendant acknowledges in his motion that "[h]e has been prohibited since his arrest in January from taking the very medications prescribed to help him control [his] outbursts" with medical staff and others.  (*Id.* at PageID 150.)  This fact was known to Knott before the detention hearing.  Also known before the detention hearing, and even a factor recognized in the Detention Order, was Knott's history of being abusive to in-patient treatment providers.  (Doc. No. 22 at PageID 117.)  Notwithstanding, Knott argues that because the Magistrate Judge was persuaded by the government's argument that other medications and treatment could be available while detained at NEOCC, that he has not presently received such medication and treatment is sufficiently new and material information to reopen the detention hearing.   This is not so because, as explained below, Knott had access to mental health treatment and medications in NEOCC but refused to cooperate with providers and staff.

Even if Knott presented new information, Knott still has the burden of demonstrating that the information materially alters the Court's evaluation of his dangerousness to others.  "[T]he new information must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *Watson*, 475 F. App'x at 600.

That pretrial release would allow Knott direct access to the Cleveland Clinic and medications prescribed by Dr. McLaughlin may be true.  What also appears to be true is that he had access to psychiatric care while at NEOCC.  Instead, and as reflected in an email

communication on May 30, 2023, Knott was "resistant and argumentative and stated that he could only be seen by his outside psychiatrist and that his outside psychiatrist was the only one who could prescribe his medications, 'Xanax and Adderall.'" (Doc. No. 36-1 at PageID 195.) The email goes on to state that Knott was informed that the NEOCC psychiatrist could prescribe him psychiatric medication multiple times. (*Id*.) Knott "interrupted each provider several times becoming loud and insulting." (*Id*.) The email concluded with the author stating that they would inquire about any further mental health appointments. (*Id*. at PageID 195-96.)

For Knott's arguments on this point to be persuasive, the Court would have to find that a defendant's outright refusal to participate in psychiatric care provided by an institution is "new information" that has a material bearing on the issue of whether he is now "less likely to pose a danger to the community." *Watson*, 475 F. App'x at 600. But just the opposite is true. Knott cannot refuse treatment and then successfully declare the conflict he created is either "new information" or "material" to the issue of his pretrial release. Knott will not engage with NEOCC's psychiatrist and has been argumentative with and insulted staff. So, even while in custody, and consistent with his conduct toward others when previously placed to an in-patient treatment program, Knott demonstrates an ongoing danger to others.

To further support his argument to reopen the detention hearing, Knott asserts that his in-custody behavior demonstrates that he no longer presents a threat because records will show that no alleged drug trafficking activity has occurred while incarcerated. Knott also argues that he would not do something contrary to his self-interest. That Knott may have ceased any alleged drug trafficking while in custody does not inform the Court how he will conduct himself if released. And while the Court recognizes and sympathizes with Knott's mental health struggles, the fact remains that his behavior towards the medical staff in the residential treatment program

and at NEOCC demonstrates that he will conduct himself in a way that is contrary to his self-interest.

In reviewing the record, this Court notes that the factors relative to Knott's danger to the community, and the lack of conditions sufficient to mitigate this danger, were all put to the Magistrate Judge. In her careful analysis, the Magistrate Judge considered the serious nature of this offense (allegedly distributing or attempting to distribute a kilogram of fentanyl), that Knott is charged with an offense that presumes detention, Knott's history (including his use of Xanax and Adderall, both of which defendant knew then to have been cut off at the time of the detention hearing), the weight of the evidence, and the danger posed. (Doc. No. 22.)

Accordingly, Knott has not met his burden of presenting new information with a "material bearing on the issue of whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community" that warrants the reopening of his detention hearing. 18 U.S.C. § 3142(f)(2); *see United States v. Terrone*, 454 F. Supp. 3d 1009, 1017 (D. Nev. 2020) (noting that the party moving under Section 3142(f)(2) bears the burden of "establish[ing]: (1) that information now exists that was not known to the movant at the initial detention hearing, and (2) the new information is material to release conditions regarding flight or dangerousness.").

Defendant also argues that the government's decision to present this matter to a grand jury rather than pursue a pre-indictment resolution and information is a new fact that makes it less likely he poses a threat to others. While the government's decision appears to have been made after the detention hearing, Knott has not directed this Court to any legal authority suggesting that the government's charging method is material for purposes of Section 3142(f)(2). The government's decision to proceed by indictment versus information, even if it was made

after a detention hearing, is not the type of information that a material bearing on the issue of whether he is now "less likely to pose a danger to the community." *Watson*, 475 F. App'x at 600.

### III. Conclusion

For the reasons stated herein, Defendant Antonio Knott's Motion to Reopen Hearing on Government's Motion for Pre-Trial Detention is DENIED.

**IT IS SO ORDERED.**

**Date**: June 22, 2023

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE